UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62824-CIV-COHN/SELTZER

BARRY ADLER and MELISSA ADLER,

      Plaintiffs,

v.

WESTJET AIRLINES, LTD.,

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Plaintiffs' Complaint [DE 15] ("Motion"). The Court has considered the Motion, Plaintiffs' Opposition [DE 21], and Defendant's Reply [DE 22], and is otherwise advised in the premises.

## I.   BACKGROUND

This action arises from harms that Plaintiffs Barry ("Barry") and Melissa ("Melissa") Adler allegedly suffered at the hands of WestJet Airlines, Ltd. ("WestJet"), when a WestJet flight crew ejected the Adlers from a Fort Lauderdale-Toronto flight before take-off. In September 2012, the Adlers made plans to travel from Fort Lauderdale, Florida, to Toronto, Canada. DE 1 ¶ 7.[1] They bought tickets for a September 18, 2012, flight with WestJet. Id. ¶¶ 7, 9. Melissa suffers from numerous medical conditions and must be accompanied by a service animal. Id. ¶ 8. Melissa

_____

[1] For the purpose of resolving WestJet's Motion, the Court adopts as true the facts alleged in the Adlers' Complaint. See Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents, 633 F.3d 1297, 1301 n.3 (11th Cir. 2011).

therefore sought advance approval from WestJet for her service animal, a four-pound Yorkshire Terrier (id. ¶ 10), to accompany her on the flight. Id. ¶ 8. WestJet approved Melissa's request in writing. Id.; DE 1-1.

On the day of their flight, the Adlers arrived at Fort Lauderdale International Airport well ahead of time. DE 1 ¶ 9. The Adlers checked in and took their boarding passes to the gate. Id. At the gate, however, the Adlers were told that WestJet's senior flight attendant felt that Melissa's dog would disturb the other passengers. Id. ¶ 10. WestJet thus moved the Adlers from their reserved seats to another pair of seats where the flight attendant thought the Adlers would cause less disruption. Id.

The Adlers boarded the airplane and took their newly assigned seats. Id. ¶ 11. While waiting for take-off, Melissa took various medications, including some meant to induce sleep. Id. Melissa soon fell asleep with her dog on her lap. Id. While Melissa slept, Barry remarked to the flight attendant who had required them to change their seats that Melissa's dog was not causing any disturbance. Id. The flight attendant responded that she was uncomfortable with the Adlers and their dog being on the airplane. Id. The flight attendant informed Barry that the aircraft would return to the gate, and that the Adlers would have to deplane. Id.

Upon reaching the gate, WestJet's personnel required the Adlers to get up and leave the airplane. Id. ¶ 12. Unfortunately, Melissa, who had taken sleep-inducing medication, had difficulty standing up and walking off of the aircraft. Id. ¶¶ 12–13. The Adlers told the crew that Melissa would have trouble walking to the gate without assistance. Id. ¶ 13. The crew, however, did not provide any assistance, such as a wheelchair, and the Adlers left the airplane under their own power. Id. At the gate, Barry

2

demanded an explanation for their removal from the airplane, but received none. Id. ¶ 14. The Adlers returned to their home in Broward County that evening. Id. ¶ 15. The same night, a WestJet employee telephoned the Adlers, apologized for their removal from the airplane, and arranged for the Adlers to fly from Miami to Toronto the next day. Id.

The Adlers commenced this suit against WestJet on December 31, 2013, contending that their unreasonable removal from WestJet's airplane on September 18, 2012, caused them numerous injuries. Melissa, who suffers from a progressive disease of the nervous system (id. ¶ 29), contends that being forced to walk from the aircraft after taking sleep-inducing medication exacerbated her condition and caused her a great deal of pain. The Adlers also allege that they were humiliated when they were ejected from the airplane. The Adlers assert three causes of action on this basis: (1) negligence; (2) fraudulent misrepresentation; and (3) negligent training and supervision. Id. ¶¶ 25–46. In the instant Motion, WestJet has moved to dismiss each of these claims against it.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where the factual allegations of the complaint cannot support the asserted cause of action. Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must give a defendant fair notice of the plaintiff's claims and the grounds upon which they rest. Id. Thus, a complaint must contain "sufficient factual matter,

3

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

A complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. A well-pled complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." Id. at 556 (internal quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

## III.  DISCUSSION

### A.  The ACAA Does Not Preempt the Adlers' Negligence Claim

WestJet first argues that the Adlers' negligence claim should be dismissed because it is preempted by the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705. DE 15 at 3–4. The ACAA prohibits discrimination by air carriers based on disabilities. Shotz v. Am. Airlines, Inc., 420 F.3d 1332, 1336–37 (11th Cir. 2005). Though the Adlers have phrased their negligence claim in common-law terms, they acknowledge that the ACAA may impact the applicable duty of care. DE 1 ¶ 26. WestJet contends that because Congress did not intend to create a private cause of action for ACAA violations, the Adlers may not assert a negligence claim implicating ACAA standards. The Court rejects WestJet's argument because although the ACAA may be relevant to WestJet's duty of care, the mere fact of its relevance does not convert the Adlers' negligence claim into a preempted claim to enforce the ACAA.

In its Motion, WestJet relies principally upon Love v. Delta Air Lines, 310 F.3d 1347 (11th Cir. 2002), for the proposition that no private cause of action exists to enforce the ACAA. DE 15 at 3–4. In Love, the Eleventh Circuit rejected a suit by a disabled individual seeking a declaration that Delta had engaged in disability discrimination and an injunction requiring Delta to comply with the ACAA. 310 F.3d at 1350–51. The court held that "Congress did not intend to create a private right of action in a federal district court to vindicate the ACAA's prohibition against disability-based discrimination on the part of air carriers." Id. at 1359.

The Adlers do not contest that a plaintiff cannot bring suit to enforce the ACAA. DE 21 at 4. Instead, the Adlers argue that they do not seek to enforce the ACAA, and that their claim is one for simple negligence under state law. Id. at 4–6. The Adlers argue that the ACAA therefore does not preempt their state-law claims, and is relevant only to the extent it impacts the applicable standard of care in this action. Id. at 5.

The Court agrees with the Adlers' position. The Eleventh Circuit has not directly addressed whether the ACAA preempts state-law negligence claims involving duties of care impacted by the ACAA. Still, numerous other courts conducting thorough preemption analyses have concluded that the ACAA, though it may not create a stand-alone cause of action for disability discrimination, does not preempt state-law negligence claims for injuries related to a failure to provide appropriate accommodations on airplanes. See, e.g., Gilstrap v. United Air Lines, Inc., 709 F.3d 995, 1010–11 (9th Cir. 2013); Elassaad v. Independence Air, Inc., 613 F.3d 119, 132–34 (3d Cir. 2010); Gill v. Jetblue Airways Corp., 836 F. Supp. 2d 33, 45–47 (D. Mass. 2011). The Court agrees with the conclusions of these other tribunals that the ACAA, which prohibits

disability discrimination, does not categorically result in express, conflict, or field preemption with regard to state common-law remedies for injuries, distinct from discrimination, which a plaintiff suffered as a result of an air carrier's failure to provide appropriate accommodations.[2]

Moreover, in its Reply, WestJet does not directly respond to the Adlers' preemption arguments or the holdings of these various precedents regarding the viability of state-law claims premised on injuries apart from discrimination. Instead, WestJet merely reiterates that the ACAA did not create a private cause of action for disability discrimination. See DE 22 at 6–7. The Court thus determines that because the Adlers' state-law negligence claim is not a claim for disability discrimination, and instead rests upon personal injuries allegedly suffered as a result of WestJet's failures of care, WestJet has not demonstrated that the claim is preempted by the ACAA. See Gilstrap, 709 F.3d at 1010–11.[3]

### B. The Adlers Have Failed to Plead Fraudulent Misrepresentation

WestJet next argues that the Adlers have failed to plead the necessary elements of their fraudulent misrepresentation claim. WestJet contends that the Adlers premise their fraudulent misrepresentation claim only on a non-actionable promise to allow Melissa to fly with her dog. WestJet also suggests that the Adlers have failed to plead

---

[2] The Court notes that although the ACAA does not entirely foreclose claims by disabled individuals asserting injuries other than discrimination against air carriers, it does abrogate conflicting state-law standards of care. See Gill, 836 F. Supp. 2d at 46–47.

[3] WestJet incorporates its ACAA preemption argument by reference into its arguments for dismissal of the Adlers' fraudulent misrepresentation and negligent training and supervision claims. DE 15 at 8–9. The Court similarly finds that WestJet has failed to show that the ACAA preempts the Adlers' remaining state common-law claims, which allege harms distinct from discrimination.

the claim with the specificity required by Rule 9(b). Because the Court agrees with WestJet that the Adlers have failed to allege the necessary material misrepresentation or actionable promise, the Court will dismiss the fraudulent misrepresentation claim with leave to re-plead.

Under Florida law, a plaintiff asserting a claim for fraudulent misrepresentation must allege a misrepresentation concerning a past or existing fact; promises of future action are usually insufficient. Weaver v. State, 981 So. 2d 508, 509 (Fla. 4th DCA 2008); Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001). A promise can support a fraud claim, however, when the promisor had no intention of performing at the time the promise was made. This is because a statement of the promisor's present intent is considered a statement of present fact. Mejia, 781 So. 2d at 1177; BGW Design Ltd. v. Serv. Am. Corp., No. 10-20730, 2010 U.S. Dist. LEXIS 128029 at *6–7 (S.D. Fla. Dec. 3, 2010). Here, the Adlers base their fraudulent misrepresentation claim on WestJet's written promise that Melissa would be allowed to fly with her dog in the future. See DE 1 ¶ 34. Accordingly, the Adlers were required to plead that WestJet had no intention to allow the dog on the airplane at the time of its promise. See First Union Brokerage v. Milos, 717 F. Supp. 1519, 1525–26 (S.D. Fla. 1989) (dismissing fraud claim where claimant failed to allege that opposing party lacked intention to perform promise).

In addressing WestJet's state of mind at the time of its promise, the Adlers conclusorily allege that "WestJet knew or should have known that its representation was false." Id. ¶ 35. In support, the Adlers allege that WestJet was unaware of the applicable federal regulations pertaining to service animals on aircraft. Id. The Adlers also allege

7

that WestJet should have known that its staff might arbitrarily bar service animals from its airplanes, again presumably because of their unfamiliarity with federal regulations. Id.

However, that WestJet and its personnel were unfamiliar with the applicable laws does not speak to whether WestJet intended to allow Melissa and her dog on the flight, having promised to do so. Given the absence of other supporting facts, the Adlers' assertion that "WestJet knew or should have known that its representation [that Melissa could travel with the dog] was false" is too conclusory to supply the necessary allegations of intent. See Twombly, 550 U.S. at 555. Accordingly, the Court will dismiss the Adlers' fraudulent misrepresentation claim for failure to plead an actionable false statement. See First Union Brokerage, 717 F. Supp. at 1525–26. Nevertheless, because the Adlers may be able to remedy this deficiency through supplemented allegations, the Court will allow the Adlers an opportunity to amend. Because the Court will dismiss this claim with leave to amend, the Court does not address WestJet's contention that the claim, as currently pled, fails to satisfy the specificity requirements of Rule 9(b).

### C. The Adlers Have Failed to Plead a Claim for Negligent Supervision

WestJet contends that the Adlers have failed to plead a claim under Count III of their Complaint, for negligent training and supervision, because they do not allege that WestJet had notice that any of its employees were unfit for their jobs. Though plaintiffs often bring claims for negligent training and negligent supervision together, the two causes of action are distinct, and only a negligent supervision claim requires the plaintiff to allege that an employer knew or should have known that its employee was unfit.

8

Accordingly, the Court will dismiss Count III only insofar as it alleges negligent supervision, and will allow the Adlers to proceed on a theory of negligent training.

To state a claim for negligent supervision, a plaintiff must allege that an employer had notice that its employee was unfit, but unreasonably failed to investigate the employee and take corrective action. Inman v. Am. Paramount Fin., 517 F. App'x 744, 748 (11th Cir. 2013) (per curiam) (citing Dep't of Envtl. Prot. v. Hardy, 907 So. 2d 655, 660 (Fla. 5th DCA 2005)).[4] Here, the Adlers do not allege that WestJet had prior actual or constructive knowledge of facts suggesting that its personnel were unfit for their duties. See DE 1 ¶¶ 39–46. Accordingly, the Adlers have failed to plead a claim for negligent supervision. See Inman, 517 F. App'x at 748. The Court will dismiss Count III insofar as it alleges negligent supervision, with leave to re-plead in the event the Adlers can remedy the claim by alleging additional facts.

Under Florida law, an employer may also be liable for "reasonably foreseeable damages resulting from the negligent training of its employees." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1265 (11th Cir. 2001). A plaintiff asserting a negligent training claim must allege that it was harmed as a result of an employer's failure to adequately train an employee, and that the nature of the employment put the plaintiff in a "zone of risk" such that the employer had a duty running to the plaintiff. Clary v. Armor

---

[4] In their Opposition, the Adlers propose a pleading standard for negligent supervision that does not require a plaintiff to allege an employer's knowledge of prior facts alerting it to an employee's unfitness. DE 21 at 12 (citing Flynn v. Polk Cnty., No. 11-2054, 2013 U.S. Dist. LEXIS 26756 at *5–6 (M.D. Fla. Feb. 27, 2013)). The Adlers' standard, however, derives from the context of a school's duties to supervise the children in its care. See Flynn, 2013 U.S. Dist. LEXIS 26756 at *5–6 (citing Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc., 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009) (citing Collins v. Sch. Bd. of Broward Cnty., 471 So. 2d 560, 563 (Fla. 4th DCA 1985))). The Court thus finds the Adlers' standard inapplicable to the factually distinct case at bar involving an employer's duty to third parties to supervise its employees.

Corr. Health Servs., Inc., No. 13-90, 2014 U.S. Dist. LEXIS 15633 at *11–12 (M.D. Fla. Feb. 7, 2014).

The Adlers allege that they were harmed when WestJet's flight staff wrongfully ejected them from a WestJet airplane. DE 1 ¶ 46. The Adlers contend that this ejectment resulted from WestJet's negligent failure to train its personnel regarding their legal obligations to accommodate service dogs. Id. ¶¶ 22, 40–43, 45–46. Drawing all permissible inferences in the Adlers' favor, the Complaint also pleads sufficient facts to show that the Adlers, as passengers on a WestJet flight, were in a reasonably foreseeable zone of risk from the actions of WestJet's flight crew, such that a legal duty of care in training the flight crew ran from WestJet directly to the Adlers. Accordingly, the Court finds that the Adlers have pled sufficient facts to sustain Count III on a theory of negligent training. See Lewis, 260 F.3d at 1265; Clary, 2014 U.S. Dist. LEXIS 15633 at *11–12.

### D. The Montreal Convention Does Not Preempt the Adlers' Claims

Finally, WestJet argues that the Court should dismiss this action in its entirety because all of the Adlers' claims are preempted by the Montreal Convention. The Montreal Convention, formally titled the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 309, is a treaty of the United States and thus the "supreme law of the land." Siddiq v. Saudi Arabian Airlines Corp., No. 11-69, 2013 U.S. Dist. LEXIS 72663 at *11 (M.D. Fla. Jan. 9, 2013) (citing U.S. Const. art. VI, cl. 2; El Al Isr. Airlines, Ltd. v. Tsui Yan Tseng, 525 U.S. 155, 174 (1999)). The Convention limits liability in suits by individuals who suffer harms related to commercial international flights. Montreal Convention arts. 1, 17, 29; Tseng, 525 U.S. at 174–76. WestJet argues that because

the Adlers have sued for harms arising out of an incident on an international flight, the
Montreal Convention applies to preempt the Adlers' state-law claims. The Court agrees
with WestJet that the Convention applies, but does not find that the Adlers' claims must
be dismissed as preempted.

The Montreal Convention provides that an air carrier may be liable on claims for
bodily injury to a passenger of an international flight if "the accident which caused
the . . . injury took place on board the aircraft or in the course of any of the operations of
embarking or disembarking." Montreal Convention art. 17. The term "accident" as used
in relation to the Montreal Convention has a broad meaning. An "accident" is "'an
unexpected or unusual event or happening that is external to the passenger,' and not
'the passenger's own internal reaction to the usual, normal, and expected operation of
the aircraft.'" Olympic Airways v. Husain, 540 U.S. 644, 651 (2004) (quoting Air Fr. v.
Saks, 470 U.S. 392, 405–06 (1985)). Complications arising from a passenger's medical
conditions are not external to the passenger, and thus are not "accidents." See
Rajcoor v. Air India, Ltd., 89 F. Supp. 2d 324, 328 (E.D.N.Y. 2000) (heart attack was
not external to passenger, thus was not "accident" under Warsaw Convention).[5] On the
other hand, a flight crew's unexpected and unusual response to a passenger's medical
condition is external to the passenger, and can be a Montreal Convention "accident."
See, e.g., Olympic Airways, 540 U.S. at 656; Siddiq, 2013 U.S. Dist. LEXIS 72663 at
*17–18 (collecting cases). Here, the Adlers allege that WestJet's flight staff

---

[5] The Warsaw Convention is the Montreal Convention's predecessor. Because
many terms of the Montreal Convention and the Warsaw Convention are substantively
similar, the Court may rely on precedent interpreting the Warsaw Convention's parallel
provisions when addressing claims under the Montreal Convention. Ugaz v. Am.
Airlines, Inc., 576 F. Supp. 2d 1354, 1360 (S.D. Fla. 2008).

unexpectedly and unreasonably reacted to Melissa's need to travel with a service animal, ejecting the Adlers from the airplane and causing them injury. The Court finds that these allegations depict unexpected and unusual events, external to the Adlers, sufficient to constitute an accident under the Montreal Convention. See Siddiq, 2013 U.S. Dist. LEXIS 72663 at *17–18.

The Court also finds that the Adlers' injuries, as alleged, took place on board WestJet's aircraft or in the process of disembarking. In response to WestJet's preemption argument, Adlers attempt to remove their claims from the scope of the Montreal Convention's limitations by characterizing their injuries as not occurring "on board the aircraft or in the course of any of the operations of embarking or disembarking." See DE 21 at 7–8. The Adlers argue that this lawsuit is premised on WestJet's failure to perform its contractual obligation to transport them to Toronto, as opposed to the trauma of their removal from WestJet's airplane on September 18, 2012. DE 21 at 7.

The Adlers' Complaint, however, belies the assertions of their motion papers. The Complaint recites a litany of harms directly relating to their forced removal from the airplane. These harms include physical suffering and emotional humiliation that the Adlers suffered on the airplane and as they were escorted from the airplane back to the airport terminal. E.g., DE 1 ¶¶ 28–30, 37–38. The Court views these injuries as taking place both on board the aircraft and during the Adlers' disembarkation, and thus within the scope of the Montreal Convention. See generally Marotte v. Am. Airlines, Inc., 296 F.3d 1255, 1259–60 (11th Cir. 2002) (discussing totality-of-circumstances examination used to assess whether plaintiff was embarking, disembarking, or on airplane).

Because the Adlers have alleged harms arising from an accident on an international commercial flight which occurred on board the aircraft or while disembarking, their claims come within the scope of the Montreal Convention. See Montreal Convention arts. 1 & 17. WestJet would have the Court conclude its inquiry here by determining that the Adlers' claims are automatically "preempted" by the Convention and dismissing the case. See DE 15 at 9–14. A finding that claims are within the scope of the Convention, however, does not compel automatic dismissal. The Montreal Convention expressly provides for recovery upon certain personal injury claims. Montreal Convention art. 17. The Convention contemplates with respect to claims within its scope that "any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise," can be maintained subject to the Convention's limitations on liability. Id. art. 29. In Tseng, the Supreme Court also appears to have acknowledged that the Convention allows for state-law claims satisfying its conditions for liability. 525 U.S. at 175 ("The [Montreal Convention] precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty."). The Court thus views the Montreal Convention as permitting a plaintiff to proceed on state-law claims alleging personal injury harms within the scope of the Convention, subject to the Convention's limitations on liability. Accord Constantino v. Cont'l Airlines, Inc., No. 13-1770, 2014 U.S. Dist. LEXIS 79643 at *6–13 (D.N.J. June 9, 2014) (analyzing Montreal Convention and determining that "local causes of action may be brought subject to the Convention's limitations"). Therefore, although the Adlers' claims fall within the scope of the Montreal Convention, they may proceed on their claims subject to the Convention's limitations on liability.

**E.  The Complaint Is Not a Shotgun Pleading**

On the second page of its Motion, WestJet has inserted a footnote containing almost a full page of single-spaced text. DE 15 at 2 n.1. In the footnote, WestJet argues that the Complaint should be dismissed in its entirety as a shotgun pleading. A shotgun pleading is one in which each count incorporates the allegations of each preceding count. Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1125–26 (11th Cir. 2014). These sorts of "shotgun" allegations fail to link each cause of action to its factual predicates, and bury what may be kernels of viable claims "beneath innumerable pages of rambling irrelevancies." Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam). The Adlers' Complaint, however, is not a shotgun pleading. The document is relatively concise, and its counts do not incorporate the allegations of each preceding count. See DE 1 ¶¶ 25–46. The Court thus declines to dismiss the Complaint as a shotgun pleading.

**IV.  CONCLUSION**

In sum, the Court finds that the ACAA does not preempt the Adlers' claims. Nor does the Montreal Convention foreclose their state-law claims based upon injuries they allegedly suffered when they were removed from their WestJet flight. The Adlers have failed to plead claims for fraudulent misrepresentation and negligent supervision, however their failures of pleading may be remedied through the inclusion of additional facts, and the Court will dismiss those claims with leave to re-plead. It is thereupon

**ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Dismiss Plaintiffs' Complaint [DE 15] is **GRANTED in part** as follows:

      a.      Count II of the Complaint, alleging fraudulent misrepresentation, is

                **DISMISSED without prejudice**;

      b.      Count III of the Complaint is **DISMISSED without prejudice** insofar as it

                alleges a cause of action for negligent supervision; and

      c.      Plaintiffs may file an Amended Complaint no later than **July 21, 2014,** re-

                pleading these claims to address the deficiencies noted in this Order.

2.    Defendant's Motion to Dismiss Plaintiffs' Complaint is **DENIED** in all other

respects.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 8th day of July, 2014.

                        JAMES I. COHN
                        United States District Judge

Copies provided to:
Counsel of record via CM/ECF